UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SCOTT MANGINO,

                       Plaintiff,

    v.

TOWN OF HENRIETTA, JACK MOORE, CRAIG
ECKERT, and PETER MINOTTI,

                       Defendants.

**AMENDED COMPLAINT**

Civil Action No.: 16-cv-6194

---

Plaintiff, Scott Mangino, by his attorneys, Underberg & Kessler LLP, Paul F. Keneally, Esq. and Alina Nadir, Esq., of counsel, alleges in his Amended Complaint as follows:

## JURY DEMAND

1.    Plaintiff, Scott Mangino, demands a trial by jury of all issues in this action.

2.    Plaintiff seeks to recover damages against Defendants, the Town of Henrietta ("Henrietta"), Jack Moore, Craig Eckert, and Peter Minotti (collectively, "Defendants"), for unlawful discrimination, a hostile work environment, and retaliation based upon Plaintiff's disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), 42 U.S.C. § 1983 (hereinafter "§ 1983"), and the New York State Human Rights Law § 290 et seq. of the Executive Law of the State of New York ("NYSHRL").

3.    Plaintiff Mangino previously filed two federal lawsuits against the same Defendants and files this Complaint to include and consolidate his existing lawsuits (Civil Action Nos. 16-cv-6194 and 16-cv-6630) with his new claims included in Equal Employment Opportunity Commission ("EEOC") Charge Nos. Nos. 525-2016-00866 and 525-2017-

1

00279.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff's claims in this action pursuant to the United States Constitution, 28 U.S.C. § 1331, and 28 U.S.C. § 1343, as well as the ADA, 42 U.S.C. § 12101 et seq. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate Plaintiff's claims under state statutory law.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the claim arose in this judicial district and Plaintiff resides in this judicial district.

6.      This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

7.      Plaintiff is an individual who resides at 1361 Middle Road, Rush, New York 14543.

8.      At all times relevant to the Amended Complaint, Plaintiff was, and remains, Defendants' "employee" as defined by the ADA and NYSHRL.

9.      Plaintiff is an individual with a disability and was regarded as disabled at all times relevant to the Amended Complaint.

10.     Defendant Henrietta is municipality in Monroe County, New York State.

11.     Defendant Jack Moore served as Henrietta's Town Supervisor at all times relevant to this Complaint.

12.     Defendant Craig Eckert is Henrietta's Deputy Director of Engineering and Planning.

13.     Defendant Peter Minotti is Henrietta's Deputy Town Supervisor.

## FACTS

14.    Mr. Mangino began working for the Town of Henrietta's Department of Public Works in April 1982.

15.    He held various positions over the years and was consistently an employee in good standing until the events at issue in this lawsuit occurred.

16.    On March 31, 2014, Mr. Mangino slipped and injured himself on ice while walking into work on the Town's property.  Mr. Mangino filed a Workers' Compensation claim.  This injury exacerbated a previous disability.

17.    On or about May 20, 2014, Henrietta, and specifically former Town Supervisor Jack Moore, sent Mr. Mangino a letter threatening termination while he was still out of work recovering from his injury.

18.    On or about July 11, 2014, Mr. Moore told Mr. Mangino that Mr. Mangino would not be allowed to return to work with restrictions to accommodate his disability, and that he could only return to work if he was 100% recovered.

19.    At Mr. Moore's direction, Mr. Mangino therefore remained out of work until his doctor cleared him to work without restrictions.

20.    In September 2014, Mr. Mangino's doctor cleared him to return to work without restrictions, and therefore Mr. Mangino reported to work on or about September 2, 2014.

21.    When he arrived, Commissioner of Public Works, Craig Eckert, directed Mr. Mangino to leave.  Confused, Mr. Mangino complied.

22.     He was subsequently advised by his Workers' Compensation attorney to return to work again the next day, on or about September 3, 2014, as he was medically cleared to return to full duty, and Mr. Mangino did as instructed.

23.     Again, Mr. Eckert instructed Mr. Mangino to leave the premises, or in the alternative, to wait in the employee break room.  Mr. Mangino chose to stay in the break room as he wanted to return to work.

24.     Around 1:00pm that day, Union President Dave Moriarty told Mr. Mangino to go home again and return the next day.

25.     Eventually, Mr. Mangino was allowed to return to work but faced continuous retaliatory treatment from the Town's supervisor employees, and in particular, from former Supervisor Jack Moore.

26.     In September 2014, Mr. Moore questioned Mr. Mangino's work ethic in relation to work that Mr. Mangino performed.

27.     Mr. Moore told Mr. Mangino that he should not have taken as much time to complete the work and that Mr. Mangino was a "slacker."

28.     About a week later, Mr. Mangino asked Mr. Moore why he said such things.

29.     Mr. Moore responded by trying to instigate a physical confrontation with Mr. Mangino.

30.     Mr. Mangino did not take the bait and walked away.

31.     During that confrontation, Mr. Moore threatened Mr. Mangino's job.

32.     Mr. Moore's retaliatory behavior did not stop there.

33.     He regularly called Mr. Mangino derogatory names.

34.     During a departmental meeting with Mr. Mangino's co-workers present, Mr. Moore falsely accused Mr. Mangino of chasing him and pinning him against a truck.

35.     Mr. Mangino was instructed to cease using a parking lot in which other employees regularly parked.

36.     Other supervisory employees joined in on Mr. Moore's retaliatory behavior.

37.     On or about October 31, 2014, Mr. Mangino tapped his finger on Mr. Eckert's desk after Mr. Eckert chastened Mr. Mangino for parking his mobile home in a particular location.

38.     Days later, Mr. Eckert issued a written discipline to Mr. Mangino for workplace violence.

39.     On two separate occasions, Mr. Mangino's wife and daughter visited him at work, and Mr. Eckert threatened to call the police if they did not leave immediately.

40.     Mr. Moore's harassing and discriminatory insults towards Mr. Mangino included, "slacker," "baby," "woman", and "fat tortoise."

41.     In the EEOC proceeding that preceded this matter, Mr. Moore admitted that he called Mr. Mangino a "slug."

42.     Despite his years of service with the Town of Henrietta, after his injury, Mr. Mangino was consistently passed over for overtime and training opportunities, while junior employees were given those opportunities instead.

43.     Some of Mr. Mangino's HIPAA-protected medical information was also mishandled, appearing on an internal website where the information was visible to other employees.

44.     Mr. Moore is also believed to have disclosed Mr. Mangino's confidential medical information to other individuals that had no need for such information.

45.     On or about December 24, 2014, Mr. Mangino filed a Charge of Discrimination with the EEOC alleging discrimination and retaliation.

46.     After an investigation, the EEOC found that reasonable cause existed to believe that the Town of Henrietta discriminated against Mr. Mangino due to his disability.

47.     On or about June 1, 2015, Mr. Mangino had to take a temporary disability leave.

48.     He provided the Town of Henrietta with a doctor's note indicating that he would be out of work from June 1, 2015 to August 1, 2015.

49.     Mr. Mangino also filled out paperwork to receive disability benefits.

50.     On July 20, 2015, Susan Eisel-Brown, a Human Resource Personnel Analyst at the time, wrote Mr. Mangino a letter informing him that he would not be able to come back to work unless he had a note from a doctor allowing him to work "without restriction" and stating that the "Town is obviously concerned about your intention with respect to returning to work on August 1, 2015."

51.     After Mr. Mangino's leave was extended by his doctor, on October 5, 2015, the Town of Henrietta notified Mr. Mangino that the Town was requiring Mr. Mangino to be placed on a leave of absence pursuant to Article 72 of the Civil Service Law.

52.     Another member of the Human Resources department told Mr. Mangino

that no one had ever been subjected to Article 72 before.

53.   On November 23, 2015 Mr. Mangino's doctor released Mr. Mangino to return to work with no restrictions beginning on November 30, 2015.

54.   Soon after Mr. Mangino's doctor sent notice to the Town, dated November 23, 2015, that Mr. Mangino was cleared to return to work without restriction on November 30, Deputy Town Supervisor, Peter Minotti, sent Mr. Mangino a letter dated November 23, 2015 stating that he would not be able to return without first being cleared for work from an independent medical examiner.

55.   Despite being released to work, the Town of Henrietta blocked Mr. Mangino's many attempts to return to work for months.

56.   The November 23, 2015 letter stated that Mr. Mangino was not to report to work, and if he did, he would be sent home.

57.   The letter also requested Mr. Mangino's medical records and attached a HIPAA authorization for Mr. Mangino to sign, but indicated that Mr. Mangino's entire medical record without exclusion should be given to the Town of Henrietta.

58.   After receiving Mr. Minotti's November 23, 2015 letter, Mr. Mangino went to the Towns' offices and expressed his concern of releasing his entire medical record to the Town.

59.   Mr. Mangino questioned why the records would not be only those related to his now resolved disability and would not be released only to an independent medical examiner.

60.   In response, Mr. Minotti sent a November 30, 2015 letter stating that if Mr. Mangino did not sign the authorization provided, he would not be returned to work.

7

61.     The letter further stated that if Mr. Mangino did not sign the authorization, the Town would pursue "disciplinary charges" against Mr. Mangino for "incompetence and misconduct for excessive absenteeism, job abandonment, and disruption of the workplace caused by your absenteeism and job abandonment."

62.     On October 17, 2015, Mr. Mangino again filed a Charge of Discrimination with the EEOC alleging that the Town of Henrietta denied him reinstatement due to his disability and retaliated against him due to his previous EEOC Charge.

63.     After its investigation, the EEOC found there was reasonable cause to believe that the Town discriminated against Mr. Mangino due to his disability and retaliated against him due to his previous EEOC Charge.

64.     Despite Mr. Mangino's efforts to return to work and the EEOC's determination, Defendants continued to hinder Mr. Mangino's ability to return to work.

65.     While Mr. Mangino was cleared to return to work, no independent medical examination was scheduled until February 23, 2016 despite Mr. Mangino's efforts to expedite the process.

66.     During those months that Mr. Mangino had to wait for the IME, he received no pay even though he was ready and willing to work.

67.     In fact, Mr. Mangino was out of work until February 2017, fourteen (14) months after his doctor cleared him for work without restrictions.

68.     In a December 4, 2015 letter, Mr. Minotti wrote to Mr. Mangino that any visit Mr. Mangino may want to make to the Town has to be preapproved during "this . period of unauthorized absenteeism."

69.     In August 2016, Mr. Mangino and his family lost their health care for five

(5) months until he was reinstated in February 2017.

70.     When Mr. Mangino was finally returned to work, after he filed and served his federal Complaint for discrimination and retaliation, he was not reassigned to his normal department; he was put in the sewer and draining department.

71.     In fact, Mr. Mangino's reassignment to the sewer and draining department was openly discussed and was purposefully done to retaliate against Mr. Mangino and to encourage him to leave the Town's employment.

72.     The extreme delay that Mr. Mangino faced in returning to work without any basis resulted in this filing a third Charge of Discrimination with the EEOC on September 12, 2016.

73.     In the Charge, he alleged that as he had filed a lawsuit based upon the previous EEOC reasonable cause charges, the Town of Henrietta unreasonably denied his right to return to work and also cut off his medical benefits.

74.     Mr. Mangino had to file a fourth Charge of Discrimination when the he eventually was returned to work in February 2017, and Defendants' retaliatory conduct did not cease despite the EEOC charges and federal lawsuits.

75.     Just one day prior to Mr. Mangino finally being allowed to return to work, Defendants promoted two employees in the Highway Department.

76.     The EEOC found that these promotions appeared to be an attempt to discourage Mr. Mangino from returning or to encourage him to resign after he did return to work.

77.     The promotion also resulted in Mr. Mangino experiencing a significant decrease in overtime hours and opportunities.

78.     In addition to the loss of wage and promotion opportunities, Mr. Moore resumed harassing and threatening Mr. Mangino.

79.     He told Mr. Mangino that as Supervisor, he could assign Mr. Mangino to work wherever he wanted, and if Mr. Mangino wanted a job, he would comply.

80.     Mr. Moore further told Mr. Mangino if he heard a "peep" from him, Mr. Moore would issue disciplinary action, blatantly threatening Mr. Mangino to discourage him from enforcing his statutory rights.

81.     Yet again, after an investigation of the two most recent Charges, the EEOC found reasonable cause to believe that the Town of Henrietta retaliated against Mr. Mangino. The investigation also confirmed that Mr. Moore revealed Mr. Mangino's confidential medical information to someone who had no need to know.

82.     The EEOC investigation further found that only Mr. Mangino and two other employees who filed EEOC charges were subject to a Section 72 hearing, while no management employees could recall any other employee being so treated.

83.     For years, Mr. Mangino had to endure blatant discriminatory and retaliatory behavior from Defendants simply because he sought to enforce his rights under state and federal law.

84.     While Mr. Moore and the other individual defendants conducted this behavior at work, Mr. Mangino has also faced ridicule in the media due to Mr. Moore's harassing insults.

85.     Mr. Mangino's career was irreparably damaged, as were his retirement benefits given the denial of deserved promotion and overtime opportunities.

86.     For over a year, he went without a paycheck due to Defendants' discrimination and retaliation.

87.     His medical benefits for himself and his whole family were cut off due to Defendants' illegal actions.

88.     Mr. Mangino did not just suffer significant financial repercussions due to Defendants' actions.

89.     He has suffered extreme emotional issues due to the years-long fight with Defendants, the harassment he faced, and the distress he felt in losing the ability to properly provide for his family.

90.     He experienced mental anguish, stress, humiliation, and embarrassment.

91.     These issues were felt throughout the family; they did not just affect Mr. Mangino.

92.     Mr. Mangino's two (2) most recent EEOC complaint resulted in probable cause findings, and he has been issued a Right to Sue letter from the EEOC for those charges, Nos. 525-2016-00866 and 525-2017-00279, attached hereto as Exhibit A.

93.     Mr. Mangino filed federal lawsuits previously related to his earlier EEOC Charges and Right to Sue letters (Civil Action Nos. 16-cv-6194 and 16-cv-6630) which will be included in the instant Amended Complaint for the purpose of consolidating his claims against Defendants into one federal Complaint.

94.     The Defendants undertook all of the actions and omissions alleged above either directly or through their agents who were authorized to take such actions and omissions.

## AS AND FOR PLAINTIFF'S FIRST CLAIM FOR RELIEF
## UNDER THE ADA AGAINST THE TOWN OF HENRIETTA
## <u>FOR UNLAWFUL DISCRIMINATION</u>

95.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

96.    By and through its course of conduct as alleged above, the Town of Henrietta and its agents willfully violated 42 U.S.C. § 12101 et seq. by discriminating against Plaintiff and denying him equal terms and conditions of employment, harassing the Plaintiff, retaliating against the Plaintiff, and materially altering the terms and conditions of his employment because of his disability.

97.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S SECOND CLAIM FOR RELIEF
## UNDER THE ADA AGAINST THE TOWN OF HENRIETTA
## <u>FOR UNLAWFUL RETALIATION</u>

98.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

99.    By and through its course of conduct as alleged above, the Town of Henrietta and its agents willfully violated 42 U.S.C. § 12101 et seq. by retaliating against the Plaintiff.

100.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S THIRD CLAIM FOR RELIEF UNDER THE NEW YORK
## STATE HUMAN RIGHTS LAW AGAINST THE TOWN OF HENRIETTA
## <u>FOR UNLAWFUL DISCRIMINATION</u>

101.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

102.    By and through its course of conduct as alleged above, the Town of Henrietta and its agents willfully violated the New York State Human Rights Law by unlawfully discriminating against Plaintiff based upon his disability.

103. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

### AS AND FOR PLAINTIFF'S FOURTH CLAIM FOR RELIEF UNDER THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST THE TOWN OF HENRIETTA FOR UNLAWFUL RETALIATION

104. Plaintiff incorporates the preceding paragraphs as if fully set forth herein

105. By and through its course of conduct as alleged above, the Town of Henrietta and its agents willfully violated the New York State Human Rights Law by harassing and treating the Plaintiff differently in retaliation.

106. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

### AS AND FOR PLAINTIFF'S FIFTH CLAIM FOR RELIEF UNDER THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST DEFENDANTS MOORE, ECKERT, AND MINOTTI FOR AIDING AND ABETTING UNLAWFUL DISCRIMINATION

107. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

108. By and through their course of conduct as alleged above, Defendants Moore, Eckert, and Minotti willfully violated the New York State Human Rights Law by unlawfully discriminating against Plaintiff based upon his disability.

109. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

### AS AND FOR PLAINTIFF'S SIXTH CLAIM FOR RELIEF UNDER THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST DEFENDANTS MOORE, ECKERT, AND MINOTTI FOR AIDING AND ABETTING UNLAWFUL RETALIATION

110. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

111. By and through their course of conduct as alleged above, Defendants

Moore, Eckert, and Minotti willfully violated the New York State Human Rights Law by harassing and treating the Plaintiff differently in retaliation.

112.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S SEVENTH CLAIM FOR RELIEF UNDER SECTION 1983 AGAINST DEFENDANTS MOORE, ECKERT, AND MINOTTI FOR UNLAWFUL DISCRIMINATION AND RETALIATION

113.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

114.    By and through their course of conduct as alleged above, Defendants Moore, Eckert, and Minotti violated Section 1983 by discriminating against the Plaintiff, harassing the Plaintiff, retaliating against the Plaintiff, and materially altering the terms and conditions of his employment because of his disability, and thereby depriving him of the equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court:

(a)    Accepts jurisdiction over this matter,

(b)    Accepts Impanels and charges a jury with respect to the claims for relief; and

(c)    Awards the following damages against Defendants:

    i.    Back pay, front pay, and all benefits along with pre and post judgment interest, in amounts to be determined at trial;

    ii.    Punitive, liquidated, and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, physical injuries and emotional and physical distress in order to compensate him for the injuries he has suffered and to signal to other employers that discrimination in employment is repulsive to legislative

enactments, in amounts to be determined at trial;

      iii.     Attorneys' fees, costs, and expenses as provided for by the applicable

statutes; and

      iii.     Any other relief which this Court deems just and proper.


Dated:       October 1, 2018
                Rochester, New York

                                    UNDERBERG & KESSLER LLP

                                    /s/  Alina Nadir

                                    _____
                                    Paul F. Keneally, Esq.
                                    Alina Nadir, Esq.
                                    Attorneys for Plaintiff Scott Mangino
                                    300 Bausch & Lomb Place
                                    Rochester, New York 14604
                                    Telephone: (585) 258-2800
                                    pkeneally@underbergkessler.com
                                    anadir@underbergkessler.com

# EXHIBIT A



**U.S. Department of Justice**

Civil Rights Division

*Disability Rights Section - NYA*
*950 Pennsylvania Ave, NW*
*Washington, DC 20530*

## JUL - 2 2018

DJ# 205-53-0

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Scott C. Mangino
1361 Middle Road
Rush, NY 14543

Re:  EEOC Charge Against:    Town of Henrietta
     EEOC No.:              525-2016-00866 & 525-2017-00279
     DJ#:                   205-53-0

Dear Mr. Mangino:

### NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

It has been determined that the Department of Justice (the Department) will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC). This should not be taken to mean that the Department has made a judgment as to whether or not your charge is meritorious.

You are hereby notified that conciliation on your case was unsuccessful by the EEOC. You are further notified that you have the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111, et seq., against the above-named respondent. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

Therefore, if you wish to pursue this matter, you should consult an attorney at your earliest convenience. If you are unable to locate an attorney, you may wish to contact the EEOC or apply to the appropriate court, since that court may appoint an attorney in appropriate circumstances under Section 706(f)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), referenced in Section 107(a) of the ADA, 42 U.S.C. § 2117(a).

We are returning the files in this matter to EEOC's District Office. If you or your attorney, have any questions concerning this matter or wish to inspect the investigative file, please address your inquiry to:

John E. Thompson, Director
Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY  10004

Enclosed you will find a list of state resources and a Notice of Rights under the ADA Amendments Act of 2008 (ADAAA).

We are forwarding a copy of this Notice of Right to Sue to the Respondent in this case.

Sincerely,

John M. Gore
Acting Assistant Attorney General

BY: _____
Amanda Maisels
Deputy Chief
Disability Rights Section

Enclosure:
New York State Resources
Notice of Rights under the ADAAA

cc:    Town of Henrietta,
       EEOC – New York Area Office

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.</u>

**"Actual" disability or a "record of" a disability** (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

> The limitations from the impairment no longer have to be severe or significant for the impairment to be considered substantially limiting.
> In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
> Only one major life activity need be substantially limited.
> With the exception of ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not** considered in determining if the impairment substantially limits a major life activity.
> An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
> An impairment may be substantially limiting even though it lasts or is expected to last fewer than six months.

**"Regarded as" coverage:**
> An individual can meet the definition of disability if an employment action was taken because of an actual or perceived impairment (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
> "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
> The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
> A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.